WESTERN DISTRICT OF TENNESSEE

☐ Eastern (Jackson) DIVISION
☒ Western (Memphis) DIVISION

Michella Davis )
)
     Plaintiff, )
)
vs. )
)           No. _____
American Home Shield )
)
     Defendant. )

---

## COMPLAINT

---

1.    This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 – 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights Act of 1991, Pub. L. No. 102 -166)
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 – 12117 (amended by the ADA Amendments Acts of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 1102-166).
**NOTE:** *In order to bring a suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

## JURISDICTION

2.    Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under Tennessee law.

## PARTIES

3.    Plaintiff resides at:

4512 Queen Sinclair Circle
STREET ADDRESS

Shelby, Tennessee 38053, (423) 718-8466
County        State        Zip Code        Telephone Number

4.    Defendant(s) resides at, or its business is located at:

150 Peabody Place Suite 300
STREET ADDRESS

Shelby, Memphis, Tennessee 38103
County    City    State    Zip Code

NOTE: If more than one defendant, you must list the names, address of each additional defendant.

5.    The address at which I sought employment or was employed by the defendant(s) is:

6399 Shelby View Drive, Suite 104

2

_Shelby_ , _Memphis_ . _Tennessee_ _38134_
County     City     State     Zip Code

STREET ADDRESS

6.    The discriminatory conduct of which I complain in this action includes *(check only those that apply)*

☐    Failure to hire

☐    Termination of my employment

☐    Failure to promote

☐    Failure to accommodate my disability

☐    Unequal terms and conditions of my employment

☒    Retaliation

☐    Other acts*(specify)*:_____

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

7.    It is my best recollection that the alleged discriminatory acts occurred on: _05-08-2018 - 12-21-2018_.
      Date(s)

8.    I believe that the defendant(s) *(check one)*:

☒    is still committing these acts against me.

☐    is not still committing these acts against me.

9.    Defendant(s) discriminated against me based on my:
      *(check only those that apply and state the basis for the discrimination. For example, if religious discrimination is alleged, state your religion. If racial discrimination is alleged, state your race, etc.)*

3

[X] Race _African American_

[ ] Color_____

[ ] Gender/Sex_____

[ ] Religion_____

[ ] National Origin_____

[ ] Disability_____

[ ] Age. If age is checked, answer the following:
I was born in_____. At the time(s) defendant(s) discriminated against me.

I was [ ] more [ ] less than 40 years old. *(check one)*

**NOTE:** *Only those grounds raised in the charge filed the Equal Employment Opportunity Commission can be considered by the federal district court.*

10.    The facts of my case are as follows: ✗

_I have been single out and treated less favorably than my Co-Workers because of my refusing to sign Corrective Actions and filing Ethical Complaint. I have been subjected to a hostile work environment based on retali._

✗ *(Attach additional sheets as necessary)* 4A; 4B; 4C; 4D;
PAGE> 4E; 4F; 4G

**NOTE:** *As additional support for your claim, you may attach to this complaint a copy of the*

4

**Question 10: Lawsuit Facts of Michella Davis**

a. I was hired on January 7, 2008 in the position of Authorization Representative.

b. On June 8, 2018 and July 19, 2018, I ask my Supervisor Erical Jordon for assistance for improvement performance to maintain my calls per hours and follow ups not being able to maintain both while doing my job my follow ups to my customers were behind.

c. I have been subjected to a hostile work environment by Supervisor Erical Jordan and was denied a bonus and commission.

d. I filed an EEOC Complaint # 490-2018-03051 and I was latter issued a Right to Sue on February 11, 2020. **See Exhibit A**

e. I was impacted by Defendant's decision to transition Retention associates from commission eligible positions of Coordinators. **See Collective Exhibit B**

f. On July 19, 2018 Erical Jordan stated she had already spoken with Keith about the follow ups due to other representatives had came to her stating they were having a hard time following up and Keith's response. That the saves did not support the need for Research time".

g. I informed Erical of each person's situation and follow ups are different and don't agree with his decision, especially if other employees were having the same issue with their follow ups.

h. My Supervisor Erical Jordan failed and immediately began to interrogate me with how other representatives were able to keep up with their follow ups without using the research queue and asking me the difference using wrap versus research.    **Page 4A**

i.  Erical Jordan was condescending and disrespectful using hand gestures on each question she asked and she did not give me an opportunity to answer, which prompted me to walk away since I could tell she was creating a hostile environment by provoking me.

j.  I was mentally drained from her interrogation and continue working my overtime in the Click point queue. Supervisor Jordan was upset with me because I had gone to Human Resources a few days prior regarding Click point and possible legal issues in regards to AHS not sending cancellation letters to customers or calling customers prior to cancellation.

k.  My Supervisor shared with me that she thought the way my co worker Marcelle Keaton resigned was unprofessional.

l.  I believed her statements were a personal attack against me and the older employee.

m.  My Supervisor informed me that Manager Keith Campbell stated that we would only use wrap up for follow ups.

n.  Other non-African American coworkers, Cathy Foust and Ronald Cook were struggling to keep up with their calls per hours and follow ups and they were both given coaching and development by their Supervisors per Keith Campbell request.

o.  My Supervisor, Erical Jordan told me that other representatives never use research and they were able to maintain their follow ups using wrap up instead of research.

p.  On July 13, 19 and 23 of 2018, I spoke with my Manager, Keith Campbell on three different occasions in regard to call volume increase due to peak season and my concerns with having a hard time following up with my customers and managing my calls per hours.                                    **Page 4B**

q.  Manager Keith Campbell informed me that her was going to investigate the issues and my concerns and circle back with me the following week on July 13, 2018.

r.  I did not get a response back by Manager Keith Campbell and I therefore sent him another instant message requesting to meet with him again on July 19, 2018.

s.  I expressed to Manager Keith Campbell my stressful situation not being able to maintain both my calls per hour and follow up in which I was attempting to be proactive in order not to fall behind and end up on a performance improved write op.

t.  Manager Keith Campbell told me I was the only one with this problem, however I did not see it that way because I was only concerned about my customers and being able to perform my job properly.

u.  I knew that Manager Keith Campbell was not truthful in telling me I was the only person who was complaining because other representative coworkers asked me themselves if I was able to keep up.

v.  In the presence of Manager Keith Campbell, I asked my co-worker Latasha Taylor, whose office was directly in front of Manager Keith Campbell's office if she was able to keep up with her calls per hour and follow ups.

w.  My co worker Taylor clearly stated that she too was not able to keep up with her calls per hour and follow ups, when she responded, "no it was a struggle and she was having to sacrifice and choose to get more saves or follow up.

x.  A week prior to these conversations in front of Manager Keith Campbell, I spoke with coworkers, Latasha Taylor and Alita Williams and both told me directly they could not keep up with the call back and follow ups.                      **Page 4C**

y.  On July 24, 2018 I spoke with Alita, Lashunda Reed and Tamara Brassel where I asked them to give me suggestions to maintain my follow ups and calls per her.

z.  Reed told me she could not and she tried to follow up with as many as she could during the first hour however it was difficult to do because the call volume queue went from 0-20 within the first 30 minutes.

aa.  My coworker Alita informed me that she too was not able to keep up with her follow ups and held up a stack of invoices and stated that she needed to process the reimbursement.

bb.  Coworker Alita informed me that she had spoken to Manager Keith Campbell  where she asked him for research time to follow up but he told her no and to continue to use wrap up.

cc.  Out of the coworkers I spoke with, I was the oldest one over 5o years of age and it appeared to me that Manager Keith Campbell wanted me to fail so that he could get me out of the department.

dd.  I expressed my concerns to Human Resources representative, Carissa Zaheed and Hope McCullough regarding the refusal of my Supervisor Erical Jordan and Manager Keith Campbell to assist me.

ee.  On July 25, 2018 Manager Keith Campbell during a focus group meeting along with 6 other employees and Supervisor Erical Jordan to determine if additional assistance/research time required for follow ups.

ff.  I was excluded from the focus group meeting on July 25, 2018.

On July 26, 2018, Manager Keith Campbell sent out the minutes from the meeting where he stated that he specifically asked my co-worker Alita Williams, the top performer if she

**Page 4D**

required assistance and reported that she stated that she did not need any extra time.

gg. The minutes of the meeting held by Manager Keith Campbell included the representative's names and their suggestions.

hh. Both my exclusion from the meeting and the statements in the minutes was a personal attack against me with Manager Keith Campbell basically calling me a liar when he knew the day prior what the other representatives had told me.

ii. Manager Keith Campbell has been allowed by AIIS to start turmoil in the workplace attempting to divide the employees and keep them from talking, because he did not like the fact that my co workers approached me for questions and concerns without speaking with him first.

jj. Manager Keith Campbell informed me that from here on out that I needed to tell the employees to come to him if they had any questions or concerns.

kk. I have an email along with notes from Manager Keith Campbell from the focus group meeting minutes that "everyone can speak for themselves and that his door was always open.

ll. I informed Manager Keith Campbell that the representatives did not trust him and that they felt he did not listen.

mm.    Manager Keith Campbell had problems with employees coming to me for answers and direction, prior to speaking with him directly and he made me feel he was intimidated by me and he wanted me to understand that he was the Manager.

nn. Manager Keith Campbell informed me in a very demeaning and intimidating manner that he was the Manager on July 13, 2018 after I merely informed him that it was his first peak season.                                                    **Page 4E**

oo. On August 4, 2018 I was wrongfully issued a write up for inappropriately leaving intimidating notes on associates and Supervisors computers.

pp. On August 15, 2018 I met with the acting Director Eric Irlbeck whom accused me of having a behavior issue that needed improvement, stating that with change or directive I tend to be negative and accused me of bulling, threatening and intimidating.

qq. Director Eric Irlbeck issued me a disciplinary action where he accused me of placing notes on the Supervisor and employees desk in regards to what a save or not a save was.

rr. I declined to sign the issued disciplinary corrective action and asked for proof that the notes.

ss. I accused Director Irlbeck of retaliation against me because I filed an ethical complaint against Manager Keith Campbell.

tt. Director Irlbeck abruptly left the meeting and he himself did not sign the corrective action.

uu. Human Resource Coordinator Hope McCullough also did not sign the corrective action.

vv. Director Eric Irlbeck was attempting to intimidate me because Human Resources had approached him in regards to his response when I told him I was going to file an ethical complaint against Keith Campbell for his lack of professionalism and calling me a liar in regards to the representatives comments concerning follow ups and calls per hour.

ww.     I filed an ethical complaint key # *317044367401* reported on **August 15, 2018**

**Page 4F**

against three (3) management personnel, Acting Director, Manager of Customer of

Retention, and a Manager of Customer retention regarding a hostile work environment,

harassment, and retaliation.

xx. I have suffered undue emotional distress and humiliation.

**Page 4G**

*charge filed with the Equal Employment Opportunity Commission or the Tennessee Human Rights Commission.*

11.     It is my best recollection that I filed a charge with the Tennessee Human Rights Commission regarding defendant's alleged discriminatory conduct on:_____

12.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on:_*February 14, 2019*_
                                                                                 Date

**Only litigants alleging age discrimination must answer Question #13.**

13.     Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct. *(check one):*

        ☐     60 days or more have elapsed

        ☐     Less than 60 days have elapsed.

14.     The Equal Employment Opportunity Commission *(check one):*

        ☐     has not issued a Right to Sue Letter.

        ☒     has issued a Right to Sue letter, which I **received** on_*February 15, 2021*_
                                                                                 Date

**NOTE:**     *This is the date you underline received the Right to Sue letter, not the date the Equal Employment Opportunity Commission issued the Right to Sue letter.*

15.     Attach a copy of the Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.

**NOTE:** *You must attach a copy of the right to sue letter from the Equal Employment Opportunity Commission.*

16.     I would like to have my case tried by a jury:

        ☐     Yes

        ☐     No

5

**WHEREFORE,** plaintiff prays that the Court grant the following relief:

X direct that Defendant pay Plaintiff back all compensation and wages, including overtime and bonuses that she has lost for any reason associated with this action from the date it was filed to closure of case at the pay rate of **$21.26 /per our**

X direct that Defendant pay Plaintiff compensatory damages: **$300,000** for emotional distress damages, emotional harm suffered including mental anguish and inconvenience. Plaintiff's emotional distress suffered was caused by the egregious outrageous discriminatory humiliating and professional degrading conduct of Defendant that resulted in significant impact on Plaintiff's emotional or physical health.

X direct that the Jury award Plaintiff **$600.000** in punitive damages where they find that Defendant (1) discriminated or retaliated against the plaintiff with conscious knowledge it was violating the law, or (2) engaged in egregious or outrageous conduct from which an inference of malice or reckless indifference could be drawn.

---

SIGNATURE OF PLAINTIFF

Date: May 14, 2020

Michella Davis

Address

4512 Queen Sinclair Cv
Millington, TN 38053

(423) 718-8466

Phone Number

6